**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EMMANUEL MONAYONG,
Petitioner,

v.

No. 94-2031

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of the Order of the Immigration and
Naturalization Service.
(A90-682-701)

Argued: November 1, 1995

Decided: January 30, 1996

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and
MICHAEL, Senior United States District Judge for the Western
District of Virginia, sitting by designation.

_____

Petition for review denied by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bokwe Godwill Mofor, Silver Spring, Maryland, for Peti-
tioner. Emily Anne Radford, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent. **ON BRIEF:** Mark C. Walters, Office
of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Emmanuel Charles Monayong challenges a decision of the Board of Immigration Appeals ("BIA") precluding him from applying for "withholding from deportation" under the Immigration and Naturalization Act ("INA"). Monayong contends that the BIA improperly ruled that, because he was convicted of an aggravated felony, he is ineligible for that relief as a matter of law. Monayong's argument is foreclosed by this court's recent en banc decision in the consolidated cases of Kofa v. INS and Moreno v. INS , 60 F.3d 1084 (1995). In Kofa, decided after this appeal was filed, we held that 8 U.S.C. § 1253(h)(2)(B), which authorizes withholding from deportation, does not require a separate determination of dangerousness to the community in the case of an aggravated felon. 60 F.3d at 1088. Rather, an alien convicted of an aggravated felony presents per se a "danger to the community," and, accordingly, is ineligible for withholding. Id. We therefore affirm the BIA decision denying Monayong withholding from deportation.

I.

Mr. Monayong, a 24-year-old native and citizen of Cameroon, came to the United States in 1979 at age eleven as a dependent of a foreign government official. In 1989, he obtained lawful permanent resident status. Monayong has lived in the Washington, D.C. area throughout his thirteen years in this country. His mother, fiancee, four siblings, and large extended family also live in that area. Monayong is employed by W.S. Manufacturers, Inc., in Maryland.

On November 12, 1991, Monayong was convicted in Virginia of distributing cocaine and received a sentence of five years. After serving less than one year, he was paroled to his family home in Arlington, Virginia. He was later taken into custody by the INS and placed

2

in deportation proceedings. He is currently detained in Oakdale, Louisiana.

Monayong alleges that, since 1991, he has participated in activities deemed subversive by the Cameroon government. The U.S. Department of State has documented that Cameroon violates the human rights of its political opponents. U.S. Department of State, Cameroon Human Rights Practices, 1994. Monayong never applied for asylum in the United States because of his status as a lawful permanent resident.

At his deportation hearing, Monayong sought leave to file for withholding from deportation under the Immigration and Naturalization Act ("INA") § 243(h). The immigration judge denied his application, concluding that, under 8 U.S.C. § 1253(h)(2)(B), withholding of deportation is not available to an alien convicted of a "particularly serious crime." Monayong appealed to the BIA. After initially dismissing the appeal as untimely, the BIA affirmed the immigration judge's decision, holding that Monayong is statutorily precluded from applying for asylum or withholding of deportation.

Monayong filed his petition for review on August 11, 1994. He contends that the BIA incorrectly construed the INA to automatically preclude him, because of his aggravated felony conviction, from applying for withholding of deportation.

II.

The issue in this case--whether, under the INA, an alien convicted of an aggravated felony is per se a "danger to the community" and therefore automatically ineligible for withholding from deportation-- was discussed in detail and resolved by our recent decision in Kofa v. INS.[1] The following discussion provides a brief summary.

_____

[1] By order dated February 10, 1995, we placed this case in abeyance pending our en banc decision in the consolidated cases of Kofa v. INS, No. 92-1246, and Moreno v. INS, No. 92-2522. On July 27, 1995, the court handed down its decision in those two cases.

3

The Refugee Act of 1980 provides two remedies to otherwise deportable aliens who face persecution in their countries of origin. The first is asylum. The Act provides that the Attorney General may grant asylum to aliens who qualify as "refugees."[2] Under the Act, a "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). In 1990, Congress amended the asylum section to exclude from consideration "[a]n alien who has been convicted of an aggravated felony." 8 U.S.C. § 1158(d). The statute defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Monayong does not contest that his conviction meets the aggravated felony definition or that he therefore is barred from applying for asylum.

The second, narrower exception to deportation is withholding. Withholding protects an alien from forced repatriation to a particular country but does not preclude deportation elsewhere if he or she would not face persecution there. Unlike the granting of asylum, which is left to the discretion of the Attorney General, withholding is mandatory for aliens who qualify.

---

[2] "The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C.§ 1158(a).

4

> The Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1253(h)(1).

However, several categories of persons are excluded from withholding. One exception excludes any alien

> if the Attorney General determines that . . . the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.

Id. § 1253(h)(2)(B). The Immigration Act of 1990 amended the Act to specify that "an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime." Immigration Act of 1990, Pub. L. No. 101-649, § 515(a)(2), 104 Stat. 5053 (1990).

The sole question posed in Kofa was how to interpret the exclusion under § 1253(h)(2)(B). Under one reading of the statute, an alien convicted of a "particularly serious crime" is ipso facto a danger to the community and thus excluded from the withholding provision. This is a one-step analysis: If an alien has been convicted of a particularly serious crime, he or she is ineligible for withholding. Under a second reading, an inquiry must be made into whether an alien constitutes a "danger to the community," but only aliens who have been convicted of a particularly serious crime are subject to that inquiry. This second approach involves a two-step inquiry: First, has the alien been convicted of a particularly serious crime? If so, does he or she constitute a danger to the community?

The BIA has interpreted the Act to mean that an alien who has been convicted of a particularly serious crime is necessarily a danger to the community and thus ineligible for withholding of deportation. See, e.g., Matter of U- M-, Interim Dec. (BIA) 3152, slip op. at 5

5

(June 5, 1991); <u>Matter of Carballe</u>, 19 I. & N. Dec. 357, 360 (1986). In <u>Kofa</u>, this court joined the Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits in adopting the BIA's one-step approach. 60 F.3d at 1088-89. Writing for the court, Judge Widener concluded that the plain language of the statute states a cause and effect; that is, because an alien has committed a particularly serious crime, he or she is <u>per se</u> a danger to the community and is thus not entitled to a separate inquiry on dangerousness. <u>Id.</u> at 1088. Alternatively, the court held that, even if the language of the statute is ambiguous, the Board's interpretation is reasonable and therefore entitled to deference under the principles of construction established by the Supreme Court in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u> 60 F.3d at 1089 (citing 467 U.S. 837, 844 (1984)).

Our decision in <u>Kofa</u> leaves nothing to resolve in this case. Because we have held that an alien convicted of an aggravated felony is not entitled to an individual determination of dangerousness, but poses <u>per se</u> a danger to the community and therefore is ineligible for withholding from deportation, we uphold the BIA decision denying Monayong relief from deportation. The petition for review is therefore

<u>DENIED</u>.**3**

_____

**3** On November 1, 1995, INS submitted a motion for leave to file a supplemental brief out of time. That motion is <u>granted</u>.

6